UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

ACE American Insurance Company,
as Subrogee of Mark Brewster,
    Plaintiff

v.                          Civil No. 06-cv-66-SM
                              Opinion No. 2007 DNH 102

Fountain Powerboats, Inc.
and Silver Sands Marina, Inc.,
    Defendants

**O R D E R**

On July 5, 2003, Mark Brewster was operating a 38 foot, high-performance "Lightning" Fountain Powerboat on Lake Winnipesaukee in New Hampshire. According to Brewster, while traveling at high speed, he throttled back on the engines and decelerated to a speed of approximately 45 miles per hour, and began a turn to port. At that point, says Brewster, the boat suddenly and unexpectedly dropped to starboard, the bow dove down, and the stern rose out of the water, ejecting Brewster and his four passengers. No one was seriously injured, but the boat capsized and sustained severe damage. According to Brewster, his insurance company declared the boat a total loss.

The insurance company, ACE American Insurance Company ("ACE Insurance"), brings this subrogation claim seeking to recover $260,340.00 in claims it paid out as a result of the accident. As defendants, it has named the manufacturer of the boat – Fountain Powerboats, Inc. ("FPI") – and the agent through which Brewster purchased the boat – Silver Sands Marina, Inc.  ACE Insurance advances four claims: strict product liability (count one); failure to warn (count two); violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. ("RSA") ch. 358-A (count three); and breach of the implied warranty of fitness for a particular purpose (count four).  By prior order (document no. 22), the court dismissed counts one and two for failure to state a claim.

Pending before the court is FPI's motion for summary judgment as to count four.  For the reasons set forth below, that motion is denied.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904

2

F.2d 112, 115 (1st Cir. 1990).  Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).  The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party.  See generally Fed. R. Civ. P. 56(e).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation.  See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

**Background**

Viewed in the light most favorable to the plaintiff, the
relevant facts are as follows.  Following the accident, Brewster
contacted Chris Gagnon, President of Silver Sands Marina, and
notified him that the boat had capsized.  Employees of Silver
Sands and Tow Boat US, using a barge equipped with a crane,
recovered the boat and returned it to the marina.  Brewster says
he spoke with Gagnon on several occasions about the accident and
explained that he was surprised the boat was unable to
successfully perform the turn he had attempted.  Among other
things, he noted that he had performed nearly identical maneuvers
with other Fountain Powerboats he had owned, without any
problems.  The import of Brewster's conversations with Gagnon is
clear: Brewster believed (and unmistakably conveyed to Gagnon)
that the accident was caused by a defect in the design and/or
construction of the boat.

According to Brewster, Gagnon responded that he believed
operator error caused the accident, explaining that the boat's
engines and trim tabs should have been configured in a different
manner than would have been the case with the smaller and less
powerful Fountain Powerboats Brewster owned previously.  In other
words, Gagnon suggested that, while Brewster may have had the

4

engines and trim tabs in the proper positions for one of his
smaller Fountain Powerboats, he should not have used the same
configuration for his new boat, but likely did.  Gagnon also
opined that, given the extensive damage to the boat, he believed
Brewster was traveling faster than 45 miles per hour immediately
prior to the accident.

Brewster did not notify FPI of the accident, nor did he have
any contact or communication with representatives of FPI
following the accident.  But, Silver Sands says that shortly
after it recovered the boat, it contacted FPI's regional
representative, Chuck Arnold, to let the company know of the
accident.  Silver Sands also says that shortly thereafter, Arnold
came to the marina to personally inspect the damaged boat.

For its part, FPI admits that Chuck Arnold was its Northeast
Sales Representative.  But, says FPI, Arnold is no longer
employed by the company and, despite a diligent search, it has
been unable to locate any record of Arnold (or any other company
employee) having been informed of the accident in 2003.  Instead,
says FPI, it first learned of Brewster's accident on March 24,
2006, when it was served with a copy of ACE Insurance's
complaint.  Subsequently, on August 18, 2006, FPI received a

5

letter from plaintiff's counsel, notifying the company that ACE
Insurance (as Brewter's subrogee) was asserting "claims of breach
of implied warranty and breach of express warranty."  Letter of
Attorney Paul Cavanaugh (document no. 23-3).

In support of its motion for summary judgment as to count
four of plaintiff's complaint, FPI asserts that neither Brewster
nor ACE Insurance provided it with timely notice of the warranty
claims, as is required by the New Hampshire Uniform Commercial
Code, RSA 382-A:2-607(3)(a).  ACE Insurance, on the other hand,
asserts that neither it nor Mr. Brewster had any obligation to
notify FPI of the warranty claims, since the "seller" in this
case (and the party entitled to such notice) was Silver Sands
Marina.  Moreover, says ACE Insurance, even if FPI was entitled
to such notice, it was notified of the accident through its
agent, Silver Sands Marina, which notified its employee (Arnold).
According to ACE Insurance, the fact that FPI was made aware of
not only the accident, but also Brewster's contention that it was
caused by a design and/or manufacturing defect in the boat
(rather than operator error), was sufficient to meet the notice
requirements of the Uniform Commercial Code.

**Discussion**

Section 2-607(3)(a) of New Hampshire's Uniform Commercial Code provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  With regard to that notice requirement, this court has concluded that:

> the notice requirement of RSA 382-A:2-607(3)(a) imposes on plaintiffs the obligation to give defendants notice of potential breach of warranty claims <u>prior</u> to filing suit.  If that notice requirement is to have any meaning at all, a civil complaint cannot serve the dual purpose of providing the defendant(s) with notice of potential warranty claims <u>and</u> actually initiate legal action based on those warranty claims.

<u>Herne v. Cooper Indus.</u>, 2005 DNH 144 at 15 (D.N.H. Oct. 19, 2005) (emphasis in original).  Plainly, then, neither ACE Insurance's complaint, nor the subsequent letter authored by Attorney Cavanaugh, was sufficient to meet the U.C.C. notice requirement.  Consequently, the questions presented by FPI's motion for summary judgment are: (1) whether FPI, as manufacturer of the allegedly defective boat, was entitled to notice of potential warranty claims; and, if so, (2) whether, by informing FPI's sales agent, Silver Sands Marina, of the accident, Mr. Brewster (indirectly) provided FPI with adequate notice of his intent to pursue warranty claims under the U.C.C.

7

The New Hampshire Supreme Court has yet to determine whether, in the context of a consumer transaction such as this, a buyer must notify not only his immediate seller of potential warranty claims, but also all other parties who either manufactured parts for the allegedly defective product or actually constructed the allegedly defective product (known as "remote sellers").  Courts from several jurisdictions have debated the point, but there remains a decided lack of agreement concerning the proper interpretation of the UCC's notice requirements.  See, e.g., Compaq Computer Corp. v. Lapray, 135 S.W.3d 657, 674–675 (Tex. 2004) (collecting cases); Halprin v. Ford Motor Co., 420 S.E.2d 686, 689 (N.C. App. Ct. 1992) (collecting cases).

The court is persuaded that the better-reasoned approached (and the approach the New Hampshire Supreme Court would likely adopt if presented with the issue) is the one that requires the buyer in a consumer transaction to notify only his or her immediate seller of potential U.C.C. warranty claims.  See, e.g., Halprin, 420 S.E.2d at 689 ("The majority of courts in other jurisdictions that have construed this notice provision in the Code have held that buyers need notify only their immediate sellers.").  As the Colorado Supreme Court observed:

8

Many such courts have recognized that in most
nationwide product distribution systems, the
seller/representative dealer may be presumed to
actually inform the manufacturer of any major product
defects.  Furthermore, as one commentator has noted,
"[i]t is perhaps more reasonable to treat notice to an
immediate seller as sufficient against a remote seller
than vice versa, in view of the immediacy of relation
that exists in the one instance but not in the other."
This presumption forms the basis of the principle that
a remote manufacturer may raise as its own defense the
buyer's failure to give timely notice to the immediate
seller.  In view of the unambiguous language of section
4-2-607(3)(a), we conclude that a purchaser injured by
a product is not required to give notice of such injury
to a remote manufacturer prior to initiating litigation
against such manufacturer.

Cooley v. Big Horn Harvestore Systems, Inc., 813 P.2d 736, 741-42

(Colo. 1991) (citations omitted).  Interpreting the notice

requirement of the U.C.C. in this manner, while plainly

benefitting the consumer, imposes little hardship on the

manufacturer of the allegedly defective product.

[F]rom the standpoint of the remote manufacturer,
notice to the immediate seller, in the ordinary course
of events, will inure to the manufacturer's benefit.
This is so because the Code envisions that when the
consumer's notice of breach is given to his immediate
seller, such person to preserve any right of action he
may have for breach of implied warranty will give
notice to his immediate seller, and so on upstream
until the seminal point of the distributive chain is
reached.  This sequential notice requirement is thus
calculated to provide the remote manufacturer with
notice and an opportunity to correct the defect, where
possible, and to investigate claims that might
eventuate in litigation.

<u>Palmer v. A.H. Robins Co.</u>, 684 P.2d 187, 206 (Colo. 1984)
(citations and internal punctuation omitted).

Finally, it is probably worth noting that requiring a
"buyer" to notify only his or her "seller" (and not remote
sellers or the manufacturer) of potential warranty claims is
consistent with the plain language of the governing statute.  The
New Hampshire Uniform Commercial Code defines "buyer" as "a
person who buys or contracts to buy goods" and "seller" as one
"who sells or contracts to sell goods."  RSA 382-A:2-103(1).
Here, Mr. Brewster, the "buyer," complied with the statutory
notice requirements when he arguably notified his "seller,"
Silver Sands Marina, that his boat capsized as a result of
(alleged) design and/or manufacturing defects.  Because FPI was
not the "seller" from whom Brewster purchased the boat, it was
not entitled to notice of his potential warranty claims.  <u>See,
e.g.</u>, <u>Cooley</u>, 813 P.2d at 741 ("[T]he language of section 2-
607(3)(a) is unambiguous: it requires a buyer to give notice of a
defective product only to the 'seller.'  The General Assembly has
not elected to require advance notice to a manufacturer of
litigation for breach of the manufacturer's warranty of a
product, and we find no compelling reason to create such a

condition precedent judicially in the context of commercial litigation.") (citation omitted).

The court concludes that, in a consumer transaction such as this, the New Hampshire Supreme Court would likely hold that the notice provisions of RSA 382-A:2-607 require a buyer to notify only his or her immediate seller of potential U.C.C. warranty claims; the buyer need not provide such notice directly to remote sellers.  See generally Moores v. Greenberg, 834 F.2d 1105, 1107 n.3 (1st Cir. 1987) ("a federal court may assume that the state courts would adopt the rule which, in its view, is supported by the thrust of logic and authority.") (citations and internal punctuation omitted).

When Brewster informed his immediate seller (Silver Sands Marina) of the accident and his belief that it was caused by a defect in the boat, he provided notice to the only party entitled to such notice under RSA 382-A:2-607.  Of course, whether his words constituted sufficient notice that he (and/or his insurance company) intended to pursue warranty claims, and whether it was given in a reasonably timely fashion, are generally questions of fact to be resolved by a jury.  See Dudley v. Business Express, 882 F. Supp. 199, 211 (D.N.H. 1994).  The record as currently

developed does not support resolution of those issues by summary judgment.

### Conclusion

In a diversity case, such as this, if the governing state law is unclear, the presiding federal court must either predict how the state's highest court would likely resolve the pending legal question or certify that question to the state court.  See, e.g., Sisson v. Jankowski, 2002 WL 122380 at *6, 2002 DNH 014 (D.N.H. Jan. 29, 2002).  Here, neither party has moved the court to certify any legal questions to the New Hampshire Supreme Court.  Given the facts of this case, and for the reasons set forth above, the court concludes that the New Hampshire Supreme Court would likely hold that a consumer/buyer need only notify his or her direct seller of potential warranty claims under the Uniform Commercial Code.  Notice to remote sellers is not required.

As required by RSA 382-A:2-607(3)(a), Brewster notified his seller, Silver Sands Marina, that he had an accident while operating his boat, and arguably that the accident was caused by a design/manufacturing defect in the boat.  As noted above, whether that notice was sufficient and timely are generally

factual questions.  Accordingly, Fountain Powerboats' motion for summary judgment as to count four of ACE Insurance's complaint (document no. 23) is necessarily denied.

       **SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 24, 2007

cc:  Paul F. Cavanaugh, Esq.
     Timothy G. Sheedy, Esq.
     Dean B. Eggert, Esq.
     Michael S. Kinson, Esq.